WALKER *v.* COUNTRYSIDE CASUALTY CO.

5-3710                                              396 S. W. 2d 824

Opinion delivered December 13, 1965.

*Batchelor & Batchelor, H. Clay Robinson,* for appellant.

*Shaw, Jones &Shaw,* for appellee.

CARLETON HARRIS, Chief Justice. William J. Koch, one of the appellants herein, a resident of Logan County, owned a dump truck, and was engaged in hauling various materials. Joseph Eugene William Walker, the other appellant, is also a resident of Logan County, and was eighteen years of age at the time of the occurrence hereinafter discussed. On December 24, 1962, Walker, while assisting in greasing the dump truck, was injured when the bed of the truck fell on him, crushing his right leg; the leg was subsequently amputated. Thereafter, Walker, through his mother as next friend, instituted a suit against Koch, alleging negligence on the part of that person, and seeking damages in the sum of $77,586.75. Koch, who held a policy of liability insurance on the truck with Countryside Casualty Company, appellee herein, made demand upon the insurance carrier to defend the action. Countryside took the position that coverage

was not afforded under terms of the policy, because Walker was an employee of Koch, but the company did assume the defense under a reservation of rights; subsequently, Countryside filed an action for declaratory judgment, asserting that a controversy existed between the company and appellants. Appellee asserted that, under the policy of insurance held by Koch, it was not required to defend, nor was it required to pay any possible judgment up to the limits of the policy. The company prayed that the court enter its declaratory judgment, finding that appellee did not owe any obligation under the policy of insurance held by appellant Koch. On trial, the court, sitting as a jury, held that, due to an exclusion clause in the contract, excluding coverage where any employee of the insured was injured while in the course of his employment, the company was not obligated to defend the suit brought against Koch by Walker, and would not be obligated to pay any part of any judgment rendered against Koch. From the judgment entered in accordance with these findings, appellants bring this appeal.

Under the terms of the insurance policy issued by appellee to Koch, coverage is excluded for:
"(e) Bodily injury to any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the insured;"

The Circuit Court held (2) to exclude coverage to appellant Koch. Appellants, in separate briefs, argue several points. Walker urges that the insurance policy in question excludes coverage to employees only if the employees are covered by Workmen's Compensation Insurance, and he (Walker) was not covered by compensation insurance. Both Walker and Koch argue that the clause is ambiguous, and that the trial court accordingly should have resolved the language in favor of the insured, rather than the insurer. It is asserted that the phrase referring to workmen's compensation coverage applies

to Sub-section (2) as well as to Sub-section (1), i. e., the intent of (e) is that an injured employee, of any kind whatsoever, is to be covered by the policy unless the employee is also covered by workmen's compensation insurance. It is further urged by appellants that, to say the least, the clause is ambiguous. We do not agree. First, let it be said that a provision excluding coverage for injuries to employees has been held to be unambiguous, and to be valid and enforceable. 7 Appelman, Insurance Law and Practice, Section 4415. In the South Carolina case of *Rhame* v. *National Grange Mutual Insurance Company*, 121 S. E. 2d 94, the identical exclusion language was passed upon by that court. The entire exclusion clause provided that the policy did not apply:

"(g) under division 1 of coverage C, to bodily injury to or sickness, disease or death of any employee of the named insured or spouse arising out of and in the course of (1) domestic employment by the named insured or spouse, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the named insured or spouse."

The court, in an opinion by Mr. Justice Moss, said:

"In the case of *Quinn* v. *State Farm Mutual Automobile Ins. Co.*, S. C., 120 S. E. 2d 15, 16, we said:

'It is a well settled rule that the terms of an insurance policy must be construed most liberally in favor of the insured and where the words of a policy are ambiguous, or where they are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured. *Pitts* v. *Glen Falls Indemnity Company*, 222 S. C. 133, 72 S. E. 2d 174. However, in cases where there is no ambiguity, contracts of insurance, like other contracts must be construed according to the terms which the parties have used, to be taken and understood in their plain, ordinary and popular sense. If the intention of the parties is clear, the Courts have no authority to change the contract in any particular. The Court has no power to interpolate into the

agreement between the insurer and the insured a condition or stipulation not contemplated either by the law or by the contract between the parties. *Chastain* v. *United Ins. Co.*, 230 S. C. 465, 96 S. E. 2d 464.'

"Insurers have the right to limit their liabilities and to impose whatever conditions they please on their obligations, provided they are not in contravention of some statutory inhibition or public policy. Accordingly, an insurer need not protect against all liabilities and a clause exempting certain liabilities from coveage is valid. * * *

"'* * * There is excluded from coverage, under section (g) (1) of said clause, domestic employees, if benefits for such injury, sickness, death or disease is payable under any workmen's compensation law; there is also excluded from coverage, under section (g) (2) of said clause, other employment by the named insured or his spouse. In our opinion, the provisions of the insurance policy heretofore quoted, are free from ambiguity, doubt or uncertainty as to the risks included and excluded."

In *Clinchfield Railroad Co.* v. *United States Fidelity & Guaranty Co.*, 160 F. Supp. 337, decided by the United States District Court for the Eastern District of Tennessee, Northeastern Division, a similar exclusion provision in an insurance policy was involved. There, the exclusion, and defendant's argument are as follows:

" 'This policy does not apply:

(d) under coverages A and C, to bodily injury to or sickness, disease or death of any employee of the Insured while engaged in the employment, other than domestic, of the Insured or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law;'

"Defendant says that by deleting the inapplicable language from the foregoing exclusion provision that it would read thus:

" 'This policy does not apply:

.  (d) under coverages A and C, to bodily injury to * * * any employee of the Insured while engaged in the employment * * * of the insured * * *' "

After reviewing several cases, the court stated:

"The Court concludes that the exclusion provisions of the policy in this suit are not ambiguous or subject to different interpretations but that the plain meaning of them is that employees suffering injuries while in their employment, other than domestic employees unless covered or subject to coverage by the Workmen's Compensation Act, are not within the coverage of the policy."

A clause with some similarity was also involved in the Georgia case of *Aetna Casualty and Surety Co.* v. *Howell, et al,* 108 F. 2d 148, decided by the Circuit Court of Appeals for the Fifth Circuit. There, the exclusion clause provided that the policy did not apply,

" '(e) to bodily injury to or death of any employee of the Insured while engaged in the business of the Insured, other than domestic employment, or in the operation, maintenance or repair of the automobile; or to any obligation for which the Insured may be held liable under any workmen's compensation law: * * *' "

In commenting upon this clause, the court [referring to the District Court] stated:

"The court found that the exclusion clause (e) contained two exceptions, one being 'domestic employment' and the other 'employment in the operation, maintenance and repair of the automobile.' We disagree with that ruling. We do not find the clause ambiguous. The clause 'other than domestic employment' set off by commas, is parenthetical, solely of itself and should not be coupled with what follows. Omitting it, the exclusion clause plainly means the policy does not apply to bodily injury or death of any employee of the insured while engaged in the business of the insured or while engaged in the operation, maintenance or repair of the automobile."

Other cases could be cited, but let it suffice to say that we agree with these rulings. We find no ambiguity in the language, and hold that the phrase, "other employment by the insured," simply means that no coverage under the policy is afforded where an employee of the insured is injured during the course of his employment.[1]

This brings us to the second question, which is, "Was Walker an employee of Koch at the time he received the injury here complained of?" Appellants contend that Walker was not an employee of Koch, but rather, was only a neighborhood boy, who had loafed around the garage since he was twelve or thirteen years of age, and who had run a few errands on widely separated occasions; that although Walker was occasionally given money, there was no agreement for compensation. It is asserted that the relationship between the two was rather like "father and son." Counsel says, referring to Koch, "as is often the case when a person works on his equipment, [he] becomes a glorified baby-sitter for all of the younger neighborhood boys whose parents do not prevent them from standing around and watching." It is pointed out that at the time of the injury, neither Koch nor Walker had discussed payment for the assistance that Walker would render in greasing the truck. As an alternative contention, it is asserted that, at most, Walker was only a casual employee, and that the term "employee," as used in automobile exclusionary clauses, should apply only to regular employees as distinguished from casual or incidental employees. We cannot agree with these assertions, and it appears that the weight of authority is against appellants' contentions. The policy provides that there is no coverage for bodily injury to *any employee* (arising out of employment by the insured). First, let it be said that the fact that Walker was a minor is of no effect. As stated in *State Farm Mutual Automobile Ins. Co.* v. *Brooks* (Mo.), 136 F. 2d 807 (Eighth Circuit):

---

[1] Of course, coverage is afforded under (1) where domestic employees receive injuries, and workmen's compensation benefits are not provided.

"The minority of the boys at the time of the accident is not material to the inquiry whether they were, as a matter of law, to be deemed members of the public covered by the policy, or employees engaged in the business of the insured. What was done determined their status as employees."

A succinct discussion of the meaning of employment is found in *Pennsylvania Casualty Company* v. *Elkins*, 70 F. Supp. 155 (E. D. Ky.). There, the employment of the injured person, Nave, was certainly incidental, for Nave was regularly employed elsewhere, but on the occasion in question, agreed to accompany Elkins on a trip to Tennessee for the purpose of delivering a load of cattle. While on the return trip, the truck, driven by Elkins, overturned, and Nave was killed. Elkins' automobile liability insurance policy contained the provision that coverage was excluded for "bodily injury to or death of any employee of the insured while engaged in the employment, other than domestic, of the insured." The party contending that coverage was afforded argued:

"That at the time of the accident which resulted in his death Ernest Nave was not an 'employee' of William Elkins, the insured, in any sense of the word but, having other regular employment, he was merely a casual, incidental and temporary helper, voluntarily rendering a particular service as an accommodation to Elkins;

"That the phrase 'any employee' as used in the exclusion provision of the policy is ambiguous and that it is susceptible of being interpreted in a restrictive sense importing regularity and continuity of service for wages or salary rather than in the broader sense including every type of the relationship of employee and hence, under the familiar rule that where a provisions of an insurance policy is open to two or more interpretations the one most favorable to the insured must be adopted, the exclusion clause of the policy here in question should be interpreted to have no application to Ernest Nave whose employment, if such relation existed at all, was only casual and temporary."

The court, in rejecting this argument, stated:

"The exclusion clause in the policy in question is obviously designed to exclude from coverage every type of employer's liability, other than that arising from 'domestic employment,' regardless of whether the employment be regular and continuous or incidental and temporary. The words used make the broad indiscriminate exclusion sufficiently clear. To hold otherwise would be to make a new contract for the parties entirely different from that which they made for themselves."

Numerous other cases involving similar factual situations to the case at bar could be cited,[2] some even holding that the injured person was an employee *as a matter of law*.[3] We, however, are of the view that the question of whether Walker was an employee is a question of fact, rather than a question of law, and we are therefore only concerned with whether there was substantial evidence to support the findings of the trial court, sitting as a jury.

The evidence reflected that Walker was eighteen years of age, and a student in the Eleventh Grade, at the time of the accident. He held an after-school job with the Fox Transfer company. Koch was a neighbor, and Walker, on various occasions over a six-year period had helped Koch maintain his trucks. This had consisted of different tasks; as Walker stated, "I helped him to grease his truck and I changed oil for him and I have driven—I have gone from place to place with him . . .

[2] *Allied Mutual Casualty Company* v. *Dahl*, 122 N. W. 2d 270 (Iowa 1963). In this case, Ernest Goedken, a minor, received a serious personal injury while riding in the back end of a panel truck, owned by one Wolf, driven by one Dahl, and insured by *Allied Mutual Casualty Company*. Just before being injured, Goedken, with other boys, had been engaged in distributing handbills in behalf of congressional canidate Wolf, and the boy was preparing to distribute additional handbills at the time of the injury. Goedken had been given a dollar for his part in the first distribution, but did not know what he would be paid for the second distribution. After the injury, he was paid $2.00. The trial court found that Goedken was an employee of Wolf at the time of the injury, and that the policy of insurance did not protect either Wolf or Dahl. This holding was based on an exclusion clause which had the identical provision of (2) in the instant case, i. e., "other employment by the insured."

[3] *Inter alia, Clinton Cotton Oil Company* v. *Hartford Accident and Indemnity Company*, 186 S. E. 399 (S. C.); *Church* v. *Consolidated Indemnity and Insurance Company*, 174 Atl. 488 (N. J.)

Well, I had known him for about five or six years and I had been helping him off and on and then afterwards he started coming by and wanting me to help him to do this and do that . . . When I helped him, he would give me something when he had the money, and if he didn't have any money I didn't get anything until he got the money." When asked, "Do you know why he came to get you?" Walker replied, "Because I didn't—when I helped him I didn't charge him so much." Walker stated that on occasion Koch would pay his way to the picture show, and also gave him some clothing. However, this appellant testified that before he was given anything, "I would have to earn it first." He stated that at one time Koch gave him a bicycle, "But he took it back a little while after he gave it to me." On the day of the accident (Christmas Eve). according to Walker:

"I had just got off from work from Fox Transfer and I was going home. I stopped in there right after work and he asked me if I would help him that afternoon, and he asked me if I would come back that afternoon and I told him that I guessed I would if I wanted to work and I went back after dinner, so he asked me to go down there and get the dump truck and have it greased. I took it up to the service station. They wouldn't grease it because it was too big to get inside and they said it was too cold to grease it out side, so I brought it back to the shop."

Walker stated that Koch asked him to help grease the vehicle, and he stated that he was holding the grease gun and the fittings at the time the truck bed fell. The young man testified that Koch came by the hospital the next day, and paid him $2.00.[4]

Koch denied that he hired Walker to help him wash and grease the truck, and, in fact, stated that the first he knew of Walker crawling between the bed and the frame was when he heard the boy cry out. However, as previously stated, we are only concerned with whether there

---

[4] From the evidence: "Q. What were you doing? A. I was holding the grease gun and the fittings. Q. He in fact did pay you for the work? A. He paid me the next day."

was substantial evidence to support the finding of the Circuit Court.

We think the testimony just related constitutes substantial evidence that Walker was an employee as contemplated under the exclusionary clause of the insurance policy. Under the evidence, Walker helped Koch on many different occasions during the six-year period, and was paid some amount of money in most instances, though he did not always receive the money at the time of the completion of the job. Walker stated that Koch would get him (Walker) to help because, "I didn't charge him so much." Walker testified that Koch asked him to help in greasing the vehicle, and according to his testimony, he was engaged in this task when the accident occurred. Further, he received pay.

Judgment affirmed.

JUSTICE WARD and JOHNSON are of the opinion that Paragraph (e) of Section 8, entitled "exclusions", is ambiguous, and they would reverse the judgment.