[Civ. No. 3303. Second Appellate District, Division One.—July 19, 1920.]

THE FIDELITY & CASUALTY COMPANY OF NEW YORK (a Corporation), et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT — INJURY TO EMPLOYEE WHILE RETURNING TO PLACE OF EMPLOYMENT—RIGHT TO COMPENSATION. Under the Workmen's Compensation Act, an employee who, purely for his own purposes, leaves his place of employment before his

---

What injuries arise out of, and in the course of, the employment, within meaning of Workmen's Compensation Act, notes, Ann. Cas. 1913C, 4; Ann. Cas. 1914B, 498; Ann. Cas. 1916B, 1293; L. R. A. 1916A, 40, 232; L. R. A. 1917D, 114; L. R. A. 1918F, 867.

day's work is finished and, several hours later, is injured upon the public streets when returning to his place of work, is not entitled to compensation.

PROCEEDING in Certiorari to review an award of the Industrial Accident Commission. Award canceled.

The facts are stated in the opinion of the court.

Jennings & Belcher for Petitioners.

A. E. Graupner for Respondents.

CONREY, P. J.—Writ of review to determine the validity of an award made by the Industrial Accident Commission in favor of one Arthur H. Johnson and against the Pure Milk Dairy Company, a corporation, and its insurance carrier.

The Dairy Company, as a distributor of milk in the city of San Diego, operated five automobile delivery wagons and maintained a garage for their care and repair. Johnson was employed as foreman of the garage and was furnished with a Ford automobile to be used in connection with his employment. He was permitted to use the automobile incidentally for his personal convenience and kept the automobile at his home during the time when he was at home. Johnson's regular hours of employment were from 7 A. M. until 6 P. M. He was also expected to respond to emergency calls at any time, and the company maintained a telephone at Johnson's home in order that he might be called at any time when required out of the regular hours by the emergencies of the business.

On the nineteenth day of April, 1919, having in view some affairs relating solely to his personal convenience and pleasure, Johnson left the garage at about 5 o'clock in the evening and drove the Ford car to his home and to several other places in the performance of his personal errands. After attending to these matters he went to his home, took off his working clothes, and dressed for the purpose of keeping a social engagement of the evening. He then started from his home to the garage for the purpose of attending to some unfinished duties there prior to keeping said social engagement. On his way to the garage, in suddenly turning

his car to avoid collision with a motorcycle, the car was over-turned and Johnson received the injuries for which he sought to obtain compensation and on account of which an award was made by the Industrial Accident Commission.

[1]. The question for decision is tersely stated by counsel for petitioners as follows: ''Should compensation be awarded to an employee who, purely for his own purposes, leaves his place of employment before his day's work is finished and, several hours later, is injured upon the public streets when returning to his place of work?'' This question (except only that the applicant had not left his employer's place of business at an unusual time) was presented to this court · in *Zbinden* v. *Industrial Acc. Com.*, No. 1902. Compensation having been denied by the Industrial Accident Commission, the applicant applied for a writ of review. The petition was denied without written decision, this court being then of the opinion that, as determined by the commission, an accident occurring under the circumstances stated did not arise out of or happen in the course of the applicant's employment. The accident in that case consisted in a collision between an electric railway car and an automobile in which the applicant was riding while on the way from his home to the place of employment. We think that that case was correctly determined, and it is directly in point in this case. ''In the very broadest sense, of course, it is true that an injury which happens to a man who is on his way to his place of employment is an injury 'growing out of and incidental to his employment,' since a necessary part of the employment is that the employee shall go to and return from his place of labor. But it is to be noted that the right to an award is not founded upon the fact that the injury grows out of, and is incidental to, his employment. It is founded upon the fact that the *service* he is rendering at the time of the injury grows out of, and is incidental to, the employment. Therefore, an employee going to and from his place of employment is not rendering any service, and begins to render such service only when, as has been said, arriving at the place of his employment, he proceeds to use some instrumentality provided, by means of which he immediately places himself in a position to perform his tasks.'' (*Ocean Accident etc. Co.* v. *Industrial Acc. Com.*, 173 Cal. 313, 322, [L. R. A. 1917B, 336, 159 Pac. 1041, 1044].) Under the

provisions of the "Workmen's Compensation, Insurance and Safety Act" (Stats. 1917, p. 831) the employee is entitled to compensation for injuries received by him only where, at the time of the injury, the employee is "performing service growing out of and incidental to his employment and is acting within the course of his employment." In order to establish his right to compensation, the employee must affirmatively prove that at the time of the injury the condition existed which is thus described in the statute.

Respondents have endeavored to sustain the award made herein by suggesting that through the necessities of business there are two well-defined classes of employees between whom there rests a sharp line of distinction; the first class consisting of men whose hours of labor are fixed and who have little or no authority or responsibility, and the second class consisting of "those individuals who are vested with both authority and responsibility, whose hours of labor are not sharply defined and whose responsibility may call them to go upon their employers' business at any and all hours of the day or night." It is contended that Johnson belonged to the second class and that he was "on duty twenty-four hours of the day whenever the service of the company required, or when he was ordered, or when in his judgment something was required to be done for the company's welfare"; that, therefore, since in his judgment it was necessary for him to go to the garage on the evening in question to see that certain things had been done, he should be regarded as having been occupied in his employer's service while on his way back to the garage. We think that this contention results in a broad and indefinite description of Johnson's duties, not warranted by the evidence. The evidence shows without conflict that his hours of employment were fixed, although in addition thereto he was subject to call for duty at other hours when the work called for was such as could not be performed in the ordinary course of his daily duties at the garage. This is far from being an employment which kept him in the service of the company at all times and places. When he left the garage for his own convenience and pleasure he was not engaged in the service of his employer and would not be so engaged until his actual return to the place of employment, unless, possibly, in some exceptional instances, such as when he might be notified

to repair or otherwise care for a milk wagon which had broken down somewhere on the road. But there is no evidence that any such emergency had arisen. The sole claimed purpose of his intended return to the garage was for the performance of duties at that place which were such duties as were ordinarily performed by him when on duty at the garage. The conclusion necessarily follows that the employee's injuries were not received at a time when he was performing service for his employer or acting within the course of his employment.

The award is annulled.

Shaw, J., and James, J., concurred.